## S98A1888. JAMES v. THE STATE.
(513 SE2d 207)

BENHAM, Chief Justice.

This appeal is from the felony murder conviction of Levy James III.[1] On the day of the killing, James drove to the shoe repair establishment owned by his friend Steven Hood, and parked his car blocking the drive-through window. After Hood asked James three times to move the car, the men argued and Hood threatened James with physical violence. James got into his car as the argument continued, and when the unarmed Hood walked up to the car, shot him eight

---

[1] The shooting occurred on April 24, 1996, and James was indicted for malice murder and felony murder in a true bill returned on June 4, 1996. A trial begun on January 15, 1997, resulted in his conviction for felony murder on January 18, for which he was sentenced on that same day to life imprisonment. His motion for new trial, filed January 29, 1997, and later amended, was denied on July 7, 1998. A notice of appeal was filed on July 27, 1998; the appeal was docketed in this Court on August 24, 1998; and the appeal was submitted for decision after oral argument on November 10, 1998.

times, three of which shots would alone have been fatal.

1. The evidence adduced at trial was sufficient to authorize a rational trier of fact to find James guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Cole v. State*, 254 Ga. 286 (329 SE2d 146) (1985).

2. James enumerates as error the trial court's exclusion of expert testimony proffered by James on the subject of the effect marijuana use may have had on the victim. The evidence was intended to bolster James's claim that his shooting of Hood was an act of self-defense. The expert witness testified in the defense's proffer that evidence of marijuana use was found in Hood's blood; that the amount found indicated use within a few hours before death, or indicated regular use and use within several days before death; and that marijuana use can have a disinhibiting function. On cross-examination, the witness admitted that there was no way to know whether Hood was actually under the influence of marijuana at the time James shot him. On redirect examination, the witness stated that he could not say what, if any, effect marijuana had on Hood at the time of his fatal argument with James. There was no evidence that Hood had smoked marijuana on the day of his death, the only evidence of his use being that he was a regular user. After considering that evidence, the trial court excluded the evidence as being too speculative.

That ruling is supported by the holding in *Hawes v. State*, 261 Ga. 164 (4) (402 SE2d 714) (1991), where, as here, the defense could not demonstrate how the use of drugs contributed to behavior of the victim that would have been relevant to James's justification defense. James was unable to show in his proffer that Hood had been using marijuana at a time close enough to the shooting to have had an influence on him at the time of the shooting. Under those circumstances, the evidence of marijuana use was not relevant and was properly excluded. Id.

3. During cross-examination of an eyewitness, defense counsel asked the witness to refresh his recollection with a statement the witness had given to the police. Defense counsel then contested several parts of the witness's trial testimony, asking at one point whether, since he was now testifying differently, the witness had been mistaken when he gave the statement. After cross-examination, the trial court permitted the State, over defense objection, to have the witness read the whole statement. Contrary to James's argument on appeal, that ruling was not error because where, as here, the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible. *Edwards v. State*, 255 Ga. 149 (2) (335 SE2d 869) (1985).

4. James contends on appeal that the trial court erroneously

denied his motions for mistrial on four occasions: when members of the victim's family appeared in the courtroom wearing pins showing the victim's dates of birth and death; when a police officer, in testifying, used the word "murder," which the trial court had forbidden; when a spectator in the courtroom called out in agreement with a witness's statement; and when a witness said, of James and the victim, "he just shot him down like a dog."

Whether to grant a motion for mistrial is within the sound discretion of the trial judge, and a decision based on that discretion will not be disturbed on appeal unless abuse of discretion is shown. *Isaac v. State*, 269 Ga. 875 (3) (505 SE2d 480) (1998). A review of the record persuades us that no such abuse occurred in this case: the trial court ascertained that no juror had seen the message on the pins and admonished Hood's family not to wear the pins in the courtroom; the trial court determined that the witness's use of the word "murder" was inadvertent, and offered curative instructions which the defense declined; after the outburst by a spectator, the trial court instructed the jurors to disregard any outbursts and cautioned the spectators against any further disruption of the trial; and in response to the witness characterizing James's action as shooting Hood down "like a dog," the trial court cautioned the jury that witnesses were called to testify to their observations, not their evaluations, and instructed the jury to disregard the comment the witness tacked onto his observations. Given the trial court's curative efforts, the inadvertent nature of the witnesses' remarks, and the lack of apparent prejudice, we find no abuse of discretion in the denial of James's motions for mistrial.

5. The trial court did not err in permitting the State to have Hood's fiancee identify a picture of him in life. "The general rule is that it is not error to admit a photograph of the victim while in life. [Cit.] However, the better practice is to not permit a victim's family member to identify the victim where other nonrelated witnesses are able to do so . . . . [Cit.]" *Ledford v. State*, 264 Ga. 60 (14) (439 SE2d 917) (1994). Although the witness in this case was not a family member, she lived with Hood and referred to him in her testimony as the person she loved. Under those circumstances, the trial court's decision to permit her to make the identification was subject to the criticism made in *Ledford*. However, there is no suggestion in the record that there was another witness less closely affiliated with Hood available to make the identification, and our review of the record persuades us that the identification by Hood's fiancee did not produce such an emotional display as might deprive James of a fair trial.

6. James sought to introduce as part of his showing of Hood's propensity for violence a document by which Hood settled a domestic violence matter. Since the trial court permitted testimony establishing the facts of the domestic violence incident, including Hood's pros-

ecution and the settlement of that prosecution, the document would have been merely cumulative. "It is not error to exclude otherwise relevant evidence if its probative value is substantially outweighed by considerations of avoiding the needless presentation of cumulative evidence from which the jury might or might not draw a certain inference. [Cit.]" *Green v. State*, 218 Ga. App. 648 (2) (463 SE2d 133) (1995). Because the document in question would have given the jury no information not already provided by other evidence concerning the incident, we find no error in the trial court's exclusion of it from evidence.

7. After the jury had retired to deliberate, it asked the trial court for anatomical charts the medical examiner had used to illustrate testimony regarding the location of Hood's wounds. The defense had earlier objected to the charts going out with the jury on the ground that the charts were "demonstrative evidence." The trial court admitted the charts into evidence and sent them to the jury over James's objection.

James now enumerates that decision as error, contending that numbers written on the charts may have caused the jury to believe the wounds were inflicted in that order when there was no testimony to that effect, and that permitting the exhibits to go to the jury amounted to sending the State's argument into the jury room unrebutted. The first objection has no merit because the medical examiner testified clearly that he had no way of knowing the order in which the wounds were inflicted and that the numbers were there for his convenience only. Under those circumstances, we do not believe the jury could have been confused by the numbers on the charts. The other objection amounts to a "continuing witness" objection, which is not applicable to drawings or other documents which are "demonstrative evidence that serve only to illustrate testimony given by the witnesses." *Gabbard v. State*, 233 Ga. App. 122 (3) (503 SE2d 347) (1998). We find no error in the trial court's decision to send the charts to the jury room.

8. James contends the trial court erred in refusing to strike for cause a juror who stated that he felt the use of a gun to take another's life would not be justified under any circumstances. However, the juror also stated that his feelings about gun use were personal to him, that self-defense was a circumstance under which taking a life would be justifiable, and that he would be able to consider the issues in this case impartially notwithstanding his personal principles regarding gun use. Since the juror clearly did not hold so fixed an opinion that he would be unable to set aside his personal feelings and decide the case on the evidence, we find no abuse of the trial court's discretion. *Mize v. State*, 269 Ga. 646 (6) (a) (501 SE2d 219) (1998); *Holmes v. State*, 269 Ga. 124 (2) (498 SE2d 732) (1998).

9. James's contention that the trial court erred in giving a sequential charge on murder, felony murder, and voluntary manslaughter as is forbidden in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), is controlled adversely to him by *Hill v. State*, 269 Ga. 23 (3) (494 SE2d 661) (1998). There, as here, the trial court defined the three offenses and then explained the various verdicts that could be returned.

> Analyzing the trial court's charge in this case as a whole, as we must, we find that the charge was not impermissibly sequential. The charge regarding voluntary manslaughter was complete, and makes no indication that it could be considered only after malice and felony murder had been eliminated as possible verdicts. Similarly, nothing about the portion of the charge regarding the verdict form . . . precluded the jury's consideration of provocation or passion unless and until it found Hall not guilty of felony and malice murder.

Id. at 26. We note additionally that the trial court in the present case told the jury in the charge on voluntary manslaughter that it would not be authorized to return a verdict for malice murder or felony murder without first determining whether mitigating evidence, if any, would cause the offense to be reduced to voluntary manslaughter. The charge was not, therefore, subject to the criticism to which the charge in *Edge* was subject.

10. James argues on appeal that the following portion of the jury instruction may have confused the jury regarding the State's burden of proof:

> No person shall be convicted of any crime unless and until every element of the alleged offense is proven beyond a reasonable doubt. The object of all legal investigation is the discovery of the truth, and the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

James does not explain how that charge could confuse the jury into thinking the State's burden of proof was less than beyond a reasonable doubt and we are unable to discern how that might be so. We note that a charge in almost identical language was found in *Gavin v. Vasquez*, 261 Ga. 568, 569 (407 SE2d 756) (1991), to be a sufficiently clear statement of the State's burden of proof. The giving of the charge in this case was not error.

11. The trial court did not err in giving the jury its instructions in writing after having charged the jury verbally. *Anderson v. State*,

262 Ga. 26 (3) (413 SE2d 732) (1992).

12. On appeal, James complains of several portions of the State's closing argument. At trial, however, he complained of only one portion, requesting a mistrial as to that allegedly improper argument. Since this is not a case in which the death penalty has been imposed, appellate consideration of other portions of the argument was waived by James's failure to object to them at trial. *Metts v. State*, 270 Ga. 481 (511 SE2d 508) (1999). The one portion of argument to which James did object was a reference to the deprivations Hood's family would suffer due to his absence. Argument which evokes sympathy for the family of a victim is not necessarily improper. "In fact, we have held that it is not error to remind the jury that family members of the victim do not now have a mother, wife or sister." *Dupree v. State*, 267 Ga. 38 (3) (472 SE2d 299) (1996). We conclude that the trial court did not abuse its discretion in denying James's motion for mistrial. *Isaac v. State*, supra.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in the judgment only as to Division 5, and Hines, J., who concurs in the judgment only as to Division 2.*

DECIDED MARCH 1, 1999 —
RECONSIDERATION DENIED MARCH 18, 1999.

*Robert H. Citronberg,* for appellant.

*J. Tom Morgan, District Attorney, Robert E. Statham III, Robert B. Coker, Barbara B. Conroy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jeanne K. Strickland, Assistant Attorney General,* for appellee.