## S05A1302. QUILLIAN v. THE STATE.
### (620 SE2d 376)

CARLEY, Justice.

After a jury trial, Mario Lanzo Quillian was found guilty of two counts of malice murder, four alternative counts of felony murder, two counts of aggravated assault, and one count each of possession of a firearm during commission of a felony and possession of a firearm by a convicted felon. The trial court treated the felony murder verdicts as surplusage, merged the aggravated assault counts into the malice murder counts, entered judgments of conviction on the remaining counts, and imposed consecutive sentences of life imprisonment for the malice murder counts and consecutive five-year terms for the two counts of firearm possession. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). A motion for new trial was denied, and Quillian appeals.[1]

---

[1] The crimes occurred on May 31, 1999, and the grand jury indicted Quillian on July 28, 2000. The jury returned the guilty verdicts on August 21, 2000, and the trial court entered the judgments of conviction and sentences on August 23, 2000. The motion for new trial was filed on September 20, 2000, amended on November 16, 2004, and denied on February 28, 2005. Quillian filed a notice of appeal on March 30, 2005. The case was docketed in this Court on April 28, 2005 and submitted for decision on June 20, 2005.

1. Construed most strongly in support of the verdicts, the evidence shows that, after arguing with Anthony Clay, Quillian left Anthony's apartment complex and returned with a gun. Gregory Clay, Anthony's brother, arrived in his van and began arguing with Quillian. Anthony witnessed the argument and joined in. When Gregory reached into his van, Quillian shot him multiple times. Anthony then ran to the passenger side of the van where he retrieved and attempted to load a handgun. After the handgun came apart in his hands, he attempted to flee, but fell to the ground. As Anthony lay on the ground, Quillian shot him twice in the back. Multiple witnesses testified that the victims were unarmed when they were shot, although Quillian testified that Gregory had obtained a gun from the van. Gregory died after driving away, and Anthony died on the way to the hospital. "To the extent that [Quillian] testified that he acted in self-defense, the jury was free to either accept or reject his testimony. [Cit.]" *Knight v. State*, 271 Ga. 557, 559 (1) (521 SE2d 819) (1999). The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Quillian did not act in self-defense and that he was guilty of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Knight v. State*, supra.

Quillian contends that the trial court erred when it sentenced him for possession of a firearm by a convicted felon. Since only the separate aggravated assault counts "merged into the malice murder count[s], the trial court correctly entered a judgment of conviction and a consecutive five-year sentence for the offense of possession of a firearm by a convicted felon. [Cit.]" *Roundtree v. State*, 270 Ga. 504 (511 SE2d 190) (1999). See also *Malcolm v. State*, supra at 374 (5).

2. Quillian urges that the trial court erroneously excluded evidence of the victims' reputation for, and prior acts of, violence.

> As a general rule, a victim's character is not relevant or admissible in [a] murder trial. [Cits.] There is an exception when the defendant claims justification and offers evidence that the deceased was the first aggressor. [Cits.] In Georgia, this exception permits the defendant to present evidence of both the deceased's general reputation for violence [cits.] and specific acts of violence against third persons. [Cit.]

*Austin v. State*, 268 Ga. 602-603 (2) (492 SE2d 212) (1997).

(a) Quillian argues, with respect to Gregory, only that the trial court should have admitted testimony that he was a hitman nicknamed the "Enforcer." However, the evidence which Quillian sought to admit below actually was testimony that Gregory was an enforcer for drug dealers. Regardless, the evidence consists of neither general reputation nor specific acts of violence and, thus, does not come

within the exception to the general rule against admission of evidence of the victim's character. Moreover, the trial court did admit evidence of Gregory's general reputation for violence in accordance with the method set forth in OCGA § 24-9-84, as well as specific prior acts of violence committed by Gregory. Therefore, any error was harmless, especially in light of the overwhelming evidence of Quillian's guilt of the murder of Gregory. *Peterson v. State*, 274 Ga. 165, 168-169 (2) (549 SE2d 387) (2001).

(b) The trial court did exclude prior violent acts committed by Anthony, on the ground that he was not the aggressor. Quillian contends that the prior acts were admissible because Anthony had stepped in front of him and was thus acting in concert with Gregory, who was the initial aggressor.

In order to introduce evidence of Anthony's prior acts, Quillian had to make a prima facie showing of a justification defense as to which the prior acts of Anthony would be relevant. *Dolensek v. State*, 274 Ga. 678, 680 (3) (558 SE2d 713) (2002). " 'To make this prima facie showing, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself. . . .' [Cit.]" *Knight v. State*, supra at 561 (4).

According to Quillian's own testimony, he did not fire the shots which killed Anthony in order to repel an actual assault by Gregory, since that purported assault was at an end. See *Crawford v. State*, 267 Ga. 543, 544 (2) (480 SE2d 573) (1997). Thus, Quillian was required to show that Anthony was also an aggressor who assaulted him and that, although Gregory had managed to drive away, Quillian was honestly trying to defend himself. See *Dolensek v. State*, supra. Under Quillian's testimony, he shot Anthony in the mistaken belief that he was repelling a subsequent, separate assault by Anthony. See *Crawford v. State*, supra. Quillian testified that he shot after Anthony had fled, ducked behind a car, and raised up. Quillian "admitted that he never saw a weapon and that the victim was not advancing on him. Therefore, [his] testimony did not establish a prima facie case of justification. [Cits.]" *Robinson v. State*, 275 Ga. 143, 144 (3) (561 SE2d 823) (2002). Compare *Stobbart v. State*, 272 Ga. 608, 610 (2) (533 SE2d 379) (2000). Accordingly, the trial court did not err in excluding Anthony's prior violent acts from evidence.

3. Quillian further contends that the trial court improperly rejected his *Batson* challenge regarding the State's use of peremptory strikes against prospective jurors Chatman and Colvin, who are both African-Americans.

"The trial court did not rule on whether [Quillian] established a prima facie case, but the State's explanation rendered such a showing moot. [Cit.]" *Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001). The prosecutor's explanation that Chatman had previously

had a bad experience with the same police department which investigated this case was not implausible and was sufficiently race-neutral. *Thomas v. State*, supra. The assistant district attorney struck Colvin because of his bad experiences with law enforcement and his comments which suggested that police generally practice racial profiling. The State may reasonably base its use of a peremptory strike upon a prospective juror's apparent belief that, in general, law enforcement officers are racially motivated. *Roundtree v. State*, supra at 506 (5). Although another prospective juror who was not African-American had bad experiences with law enforcement, he did not make any reference whatsoever to racial profiling or to the police department which investigated this case. Thus, the record does not support Quillian's contention that the reasons articulated by the prosecutor "were not applied to similarly situated jurors of other races." *Freeman v. State*, 268 Ga. 181, 182 (1) (486 SE2d 161) (1997). "A trial court's findings with regard to a *Batson* motion are entitled to great deference and will be accepted unless clearly erroneous. [Cit.] Applying that standard here, the trial court did not err in denying [Quillian's] *Batson* motion." *Roundtree v. State*, supra at 507 (5).

4. Quillian asserts that the trial court erroneously allowed the State to use his alleged alias. Police officers testified that the alias, "Mario Botts," was discovered when Quillian's name and date of birth were entered on the computer, and that the photograph selected by witnesses from a lineup was listed under the alias. Such "[t]estimony as to the use of an alias does not place the character of an accused in issue. [Cits.]" *McCord v. State*, 268 Ga. 842, 843 (2) (493 SE2d 129) (1997). See also *Roebuck v. State*, 277 Ga. 200, 205 (6) (586 SE2d 651) (2003).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2005.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.