## S06A0550. BELL v. THE STATE.
(629 SE2d 213)

THOMPSON, Justice.

Jimmy James Bell, Jr. was convicted of murder, aggravated assault, and weapon possession offenses arising from the shooting death of Richard Macy Weiland.[1] On appeal Bell asserts that the trial court erred in admitting his statements to the investigating officers, excluding evidence of the victim's toxicology report, and refusing certain requested jury instructions. Finding no reversible error, we affirm.

The victim drove to the area of East 54th Street and Live Oak in Savannah where he purchased what he believed to be cocaine. Upon learning, however, that the drugs were counterfeit, he became upset and angry about the situation. He returned to the area later in the day. Bell approached the victim's parked truck and the two exchanged words. After shots had been fired, Bell was observed with a gun in hand running away from the victim's vehicle. Police found the victim in the driver's seat of his parked vehicle with his seatbelt fastened. He had been killed by two gunshot wounds to the right chest at close range.

Bell claimed self-defense and testified at trial that Weiland asked him to approach his vehicle; Bell leaned inside to view Weiland's identification; Weiland grabbed Bell's jacket while making angry comments about having been sold counterfeit cocaine; and Bell shot Weiland because he feared for his life.

1. We reject Bell's assertion that the State failed to offer sufficient evidence to disprove his defense of justification. See, e.g., *Bishop v. State*, 271 Ga. 291 (2) (519 SE2d 206) (1999) ("[w]hen a defendant raises an affirmative defense and offers evidence in support thereof, the State has the burden of disproving that defense beyond a reasonable doubt"). Here the State established that the victim was found in the driver's seat of his vehicle with a cup of coffee positioned between his legs and a package of cigarettes balanced on his right thigh. His wallet was open on the passenger seat and the front passenger

---

[1] The shooting occurred on November 2, 2002. A multi-count indictment was returned on January 8, 2003, charging Bell with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, possession of a firearm during the commission of a felony (three counts), and possession of a firearm by a convicted felon. Trial commenced on June 1, 2004. On June 4, 2004, a jury found Bell guilty of felony murder, aggravated assault, one count of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. He was sentenced on the same day to life imprisonment, plus five consecutive years for one firearm possession count. The remaining convictions were merged for purposes of sentencing. A motion for new trial was filed on June 22, 2004, and was denied on June 14, 2005. A timely notice of appeal was filed and the case was docketed in this Court on December 2, 2005. Oral argument was heard on March 27, 2006.

window was almost closed. Bell testified that he approached the victim's vehicle voluntarily, armed with a gun, and he did not see a weapon in the victim's possession. After fatally shooting the victim twice in the chest, Bell fled from the scene and reported the events to no one. We are convinced that the State offered sufficient evidence for the jury to find beyond a reasonable doubt that Bell was not reasonably acting in self-defense when he shot the unarmed victim. Under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), a rational trier of fact could find Bell guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Bell asserts that the trial court erroneously admitted into evidence certain statements he gave to the investigating officers.[2]

Evidence at a *Jackson v. Denno* hearing established that the police obtained and executed a no-knock search warrant at Bell's home in the early morning hours, awakening Bell and other family members.[3] Bell was placed in handcuffs pursuant to police protocol. After the search warrant was executed, Bell was asked if he would talk to the officers at the police barracks. Bell agreed and he was driven there in a patrol car. At the police barracks Bell was released from his handcuffs and was free to move about so long as he remained in the presence of an officer at all times. He was also advised on a number of occasions that he was free to leave at any time. He initially denied any involvement in the shooting, telling the police that he was at his girlfriend's home at the time in question. Bell was asked if he would remain at the barracks while officers in the field attempted to confirm his story, and he agreed. He watched television, chatted with the officers, and was provided food while awaiting word of the investigation. He did not ask for an attorney nor did he ask to use the telephone. An officer in the field phoned the barracks and reported that Bell's girlfriend would not confirm his alibi, and information was also obtained that Bell had purchased a gun a couple of months earlier. Once confronted with this information, Bell told the police that he wanted to make a statement on the record. He was taken

---

[2] Bell enumerates as error the denial of his motion to suppress, but in essence his argument is that his statements to the police were erroneously admitted into evidence. Although a motion to suppress is directed at tangible evidence and is not the proper vehicle to challenge the admissibility of a confession (see *Robinson v. State*, 208 Ga. App. 528 (2) (430 SE2d 830) (1993); OCGA § 17-5-30), a *Jackson v. Denno* hearing was conducted at Bell's request. Following that hearing, the trial court entered an order finding that Bell's statements were freely and voluntarily given. Because the issue of the admissibility of Bell's statements was raised and ruled upon in the trial court, and because it is apparent from the record, the enumeration of error, and appellant's brief "what errors are sought to be asserted upon appeal," OCGA § 5-6-48 (f), we will consider whether Bell's statements were properly admitted into evidence.

[3] The trial court later suppressed any evidence seized pursuant to that warrant based on insufficiency of the supporting affidavit.

forthwith to an interview room where *Miranda* warnings were administered. After executing a waiver of rights, Bell confessed to the shooting and he led the officers to the murder weapon which he had concealed in a shed behind his home.

(a) Bell asserts that his initial statement to the police was not freely and voluntarily made because it was the product of a custodial interrogation without benefit of *Miranda* warnings.

[T]he determination of whether one is in custody depends upon the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer . . . the relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation.

*Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

The standard for determining the admissibility of confessions is the preponderance of evidence. To determine whether the state has proven that a confession was made voluntarily, the trial court must consider the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.

*Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999).

Bell, a 22-year-old, agreed to accompany the officers to the police station where he was released from handcuffs. His first statement was obtained shortly after his arrival at the station. He did not appear to be under the influence of alcohol or drugs. Although he was told several times that he was free to leave, he agreed to remain at the station. He was made comfortable during his stay and was not denied access to the telephone. Applying an objective standard, we agree with the trial court that a reasonable person in Bell's situation would not have believed he was physically deprived of his freedom of action in a significant way. Thus, Bell was not in custody for purposes of *Miranda* when his first statement was given. See *Gabriel v. State*, 280 Ga. 237 (2) (626 SE2d 491) (2006). Compare *McDougal v. State*, 277 Ga. 493 (1) (591 SE2d 788) (2004) (defendant who was not permitted to leave the station to keep an appointment, and was told that the officers had enough evidence to keep him there, was in custody for purposes of *Miranda*); *State v. Shephard*, 248 Ga. App. 433 (2) (546 SE2d 823) (2001) (where police entered home of intoxicated DUI defendant without a warrant and awakened him from a "dead sleep,"

statements made in a patrol car without benefit of *Miranda* warnings were ruled inadmissible).

(b) With regard to the second statement, the trial court reviewed a videotape of the interview and determined that Bell had been properly advised of his *Miranda* rights, that his confession was knowingly and voluntarily given, and that there was no coercive police activity. Considering the totality of the circumstances, we find no error in the trial court's ruling that this confession was voluntary and admissible. *Lee,* supra at 800 (2).

3. Around 9:00 a.m., an attorney arrived at the police barracks and advised the officers that he had been retained by Bell's mother to represent him. When the attorney asked to speak with Bell, an officer sought guidance from the district attorney's office and was instructed to deny the attorney's request. At least 30 minutes later, Bell executed a waiver of *Miranda* rights and the police obtained a confession. As a result of Bell's statement, a second search warrant was obtained that led to discovery of the murder weapon. Bell submits on appeal that his second statement and all that flowed from it are inadmissible because he was denied his right to counsel.

The evidence is uncontroverted that Bell never expressed a desire to speak with an attorney, nor did he invoke his right to counsel after *Miranda* warnings were administered. "[T]he rights guaranteed under the Fifth and Sixth Amendments are personal and must be invoked or waived by the individual defendant. See *Boykin v. Alabama,* 395 U. S. 238 (89 SC 1709, 23 LE2d 274) [(1969)]; *Stevens v. State,* 247 Ga. 698 (7) (278 SE2d 398) [(1981)]; *Hance v. State,* 245 Ga. 856 (2) (268 SE2d 339) [(1980)]." *Edwards v. State,* 167 Ga. App. 681, 682 (1) (307 SE2d 264) (1983). As in *Edwards,* "the attorney, acting on his own and without having consulted [Bell], was not empowered to invoke [Bell's] personal rights." Id.

4. Bell asserts that the trial court erred in granting the State's motion in limine excluding the results of a postmortem toxicology report showing the presence of cocaine metabolites in the victim's body.

In a pretrial proffer, Bell's attorney argued that the excluded evidence was relevant to his claim of self-defense since a witness would testify that he observed the victim about two hours prior to the shooting in an angry state about having been sold counterfeit drugs. The trial court excluded the evidence but offered to reconsider its admissibility if, during trial, Bell could establish relevancy. At trial, Bell elicited testimony from an investigating officer that in his experience, "sometimes" people who act violently and irrationally are under the influence of some intoxicant.

"Evidence of drug use is inadmissible when it is intended only to impugn a victim's character and has no relevance to any disputed

issues in the case." *Crowe v. State*, 277 Ga. 513, 514 (591 SE2d 829) (2004). In *Robinson v. State*, 272 Ga. 131 (3) (527 SE2d 845) (2000), under very similar facts, we determined that a toxicology report showing the presence of cocaine metabolites in the victim's blood was irrelevant where there was no showing of "what, if any, effect cocaine had on [the victim] at the time of his fatal argument with appellant." Id. at 133 (3). Under those circumstances, we held that the evidence was speculative and, therefore, irrelevant. Id. See also *James v. State*, 270 Ga. 675 (2) (513 SE2d 207) (1999); *Hawes v. State*, 261 Ga. 164 (4) (402 SE2d 714) (1991). Similarly, we hold that the evidence in the present case is too attenuated to warrant speculation about the effects of cocaine on the victim at the time of the shooting.

Contrary to Bell's assertions, *Crowe v. State*, supra, does not compel a contrary result. *Crowe* was a vehicular homicide case in which evidence of the impairment of the victim was relevant and admissible to establish that such impairment may have contributed to the accident. In the present case, an officer's speculative testimony that sometimes people act irrationally when under the influence of drugs or alcohol, coupled with the testimony of a bystander who observed the victim's demeanor two hours before the shooting, did not establish that the toxicology report was relevant to establish the victim's conduct at the time of the shooting. *Robinson*, supra at 133 (3). See also *James v. State*, supra at 676 (2) (where defendant was unable to show in his proffer that the victim had been using marijuana at a time close enough to the shooting to have had an influence on him at the time of the shooting, evidence of marijuana use was not relevant and was properly excluded). Even assuming arguendo that the report should have been admitted, evidence was put before the jury that the victim intended to purchase cocaine on the day of the shooting, and that the police discovered drug paraphernalia in his possession when they removed his body from the vehicle. Any error, therefore, was harmless, especially in light of the overwhelming evidence of Bell's guilt. See generally *Quillian v. State*, 279 Ga. 698 (2) (a) (620 SE2d 376) (2005).

5. Bell asserts that the trial court erred in refusing to give his requested charges on voluntary manslaughter and mistake of fact.

(a) The crime of voluntary manslaughter is committed when one kills "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).

> [T]he provocation necessary to support a charge of voluntary manslaughter is markedly different from that which will support a self-defense claim. The distinguishing characteristic between the two claims is whether the accused was so

influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Footnotes omitted.) *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999). See also *Hale v. State*, 274 Ga. 863 (3) (561 SE2d 70) (2002). Bell testified that he shot the victim because "I panicked and I was frightened and that was the only way I could defend myself." At best, this evidence shows that Bell was attempting to repel an attack, not that he was so angered that he reacted passionately. The trial court correctly applied *Worthem* in refusing to give the requested charge.

(b) Bell also asserts that a charge on the defense of mistake of fact under OCGA § 16-3-5[4] was warranted based on his stated belief that he was required to defend himself because the victim was about to drag him down the street with his vehicle. Where the defense is justification and self-defense and where, as here, the court gave a complete charge on those principles of law, a defendant is not entitled to a charge on OCGA § 16-3-5. *Pullin v. State*, 257 Ga. 815 (3) (364 SE2d 848) (1988); *Ellis v. State*, 174 Ga. App. 535 (2) (330 SE2d 764) (1985).

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Hines, J., who concur specially, and Sears, C. J., and Melton., J., who dissent.*

HINES, Justice, concurring specially in part.

I write separately to address the analysis in Division 4 regarding the exclusion of the results of the victim's toxicology report revealing the presence of cocaine metabolites. *Robinson v. State*, 272 Ga. 131 (3) (527 SE2d 845) (2000), is cited as authority for exclusion of the toxicology results, but it is not controlling in this case. In *Robinson*, this Court upheld the trial court's refusal to admit evidence that cocaine metabolites had been found in the victim's blood because there was no evidence of what effect, if any, the cocaine had on the victim during the fatal incident. In contrast, in this case in which the defendant Bell claims self-defense, there was evidence of the potential effect of the cocaine on the victim.

As noted in the opinion, the investigating officer testified that those under the influence of an intoxicant could act violently and irrationally. This provided a possible link between the victim's drug

---

[4] That Code section provides: "A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission."

use and his behavior at the time of the shooting, thereby rendering the evidence of cocaine metabolites in the victim's blood relevant. However, I agree that the exclusion of the report results was harmless in light of the evidence of Bell's guilt and other admitted evidence of the victim's involvement with drugs.

I am authorized to state that Presiding Justice Hunstein joins in this special concurrence.

MELTON, Justice, dissenting.

The majority concludes that the evidence does not support a finding that Bell acted in the heat of passion to repel the attack. Because there is some evidence in this case that Bell could have acted out of a sudden passion, without malice aforethought, in shooting his attacker, see OCGA § 16-5-2 (a), I would hold that it was error for the trial court to refuse Bell's request for a charge on voluntary manslaughter.

The distinguishing characteristic between voluntary manslaughter and justifiable homicide is whether the accused was so influenced and excited that he reacted passionately rather than simply to defend himself. *Gregg v. State*, 233 Ga. 117 (2) (210 SE2d 659) (1974). Passion engendered by some danger, heated arguments, and physical altercations, are all sufficient provocations for a voluntary manslaughter conviction, and all were present in this confrontation. See *Miller v. State*, 223 Ga. App. 311, 312 (477 SE2d 430) (1996); *Mims v. State*, 180 Ga. App. 3 (1) (348 SE2d 498) (1986); *Woody v. State*, 262 Ga. 327 (2) (418 SE2d 35) (1992). Nevertheless, the majority determines that the victim's conduct before the shooting mandated only a justification instruction. Bell's trial testimony of the circumstances surrounding the attack show that sufficient provocation existed to raise the jury issue of whether Bell was so aroused that he reacted with a sudden passion rather than simply to defend himself. Bell testified that the victim pulled up alongside him and motioned for Bell to come towards the truck. When Bell leaned into the open passenger door, the victim began yelling at him about being "ripped off" for some drugs. This verbal threat together with the victim's conduct in "reaching out and grabbing" Bell, threatening to drag Bell down the street with his truck, and then "slapping away" Bell's hand as Bell attempted to turn off the ignition, supplied sufficient provocation to excite the passion necessary for voluntary manslaughter.

Where the evidence supports both, reliance on a justification defense does not preclude a charge on the lesser included crime of voluntary manslaughter. *Woody v. State*, supra. If there is the slightest doubt under the evidence as to whether voluntary manslaughter is involved, the trial judge has the duty to submit that issue to the jury. Id. The sufficiency of the provocation was an issue for the jury to

determine based on evidence established at trial that the victim yelled at Bell, grabbed his jacket and held him in the cab of the truck while threatening to drive off. Because facts surrounding the attack established the evidence of passion and provocation needed to authorize a voluntary manslaughter charge, *Reynolds v. State*, 271 Ga. 174 (3) (517 SE2d 51) (1999), the trial court erred in declining to give the requested charge. *Coleman v. State*, 256 Ga. 306 (1) (348 SE2d 632) (1986). Compare *Paul v. State*, 274 Ga. 601 (3) (b) (555 SE2d 716) (2001) (words alone cannot constitute serious provocation).

I am authorized to state that Chief Justice Sears joins in this dissent.

DECIDED APRIL 25, 2006 —
RECONSIDERATION DENIED MAY 19, 2006.

*Michael L. Edwards*, for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney, Thurbert E. Baker, Attorney General, Laura D'Ann Dyes, Assistant Attorney General*, for appellee.