**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 24, 2021**

# In the Court of Appeals of Georgia

A21A1109. REESE v. THE STATE.

RICKMAN, Chief Judge.

After a jury trial, Adrian Reese was convicted of one count of rape.[1] He appeals from the denial of his motion for new trial, arguing, inter alia, that the trial court erred by denying his *Batson*[2] challenge to the State's use of its peremptory strikes to remove African-Americans from the jury pool. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the evidence shows that on January 3, 2015, Reese followed the victim, a college student, as she visited several bars and a Waffle House in downtown Athens, Georgia. Surveillance video

---

[1] An additional count of theft by taking was nolle prosed at trial.

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 S.Ct. 1712, 90 LE2d 69) (1986).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

from the Waffle House showed the victim shrugging Reese's arm off her and pushing him off her with his arms. Later that evening, Reese followed the victim to the Boar's Head Bar in Athens. Feeling alarmed, the victim devised a plan to sneak away from Reese at the Boars Head bar through the women's restroom. However, Reese was outside waiting for her when she exited the bar. The victim testified that Reese then forced her into the back of a white pick-up truck against her will. Another man drove the truck while Reese restrained the victim from escaping.

They drove the victim to a house in another part of the city. Reese then forced the victim into the home, where he removed her clothes, threw her on the bed and raped her. The victim began to fight off Reese while he was on top of her until he covered her screaming mouth with bed sheets and began to choke her, making the victim fear for her life. Afterwards, the victim ran out the front door of the house and made it to a hotel in the downtown area where she informed a security guard of the rape. After making it back to her own hotel, the victim decided to call the police to report the rape. The victim identified Reese in a photographic lineup. A sexual assault exam revealed that the victim experienced injuries consistent with penetration. Fingernail cuticle swabbings taken from the victim matched Reese's DNA.

1. Reese argues that his conviction should be reversed because the trial court failed to sufficiently evaluate the State's reasons for its preemptory strikes. Specifically, Reese argues that the trial court did not conduct a full *Batson* analysis and that, if it had, it would have seen the State's discriminatory intent in striking African-American potential jurors. Reese also argues that the State failed to strike other non-African American jurors with similar "infirmities." For the reasons that follow, we disagree.

A *Batson* challenge involves three steps:

(1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent. At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even reasonable. And, at the third step of the *Batson* analysis, the trial court makes credibility determinations, evaluates the persuasiveness of the strike opponent's prima facie showing and the explanations given by the strike proponent, and examines all other circumstances that bear upon the issue of racial animosity.

(Citations and punctuation omitted.) *Thomas v. State*, 309 Ga. 488, 490-491 (1) (847 SE2d 147) (2020). Further, the fact that "a prosecutor's explanation for a peremptory strike is not supported by the record or would apply equally to a similarly situationed non-African American juror who is permitted to serve may support a finding of discriminatory intent at *Batson's* third step." (Citation and punctuation omitted.) Id. Finally, a trial court's finding as to whether the opponent of a strike has proven discriminatory intent is "entitled to great deference and will not be disturbed unless clearly erroneous." (Citation and punctuation omitted.) *Bryant v. State*, 309 Ga. App. 649, 650 (1) (710 SE2d 854) (2011).

The record shows of the 33 prospective jurors who comprised the venire, there were 12 African-Americans and 21 Caucasians. During jury selection, the State used 8 of its 10 peremptory strikes to remove African-Americans from the venire and 7 out of 10 peremptory strikes to remove females from the venire. After Reese made his *Batson* challenge as to race and gender, the trial court agreed that Reese had made a prima facie showing of racial discrimination in the use of the State's peremptory

strikes,[4] but did not agree that Reese had made a prima facie showing of gender discrimination.[5]

The trial court then required the State, as the second step of the *Batson* analysis, to provide the reasons for its peremptory strikes. The State gave the following explanations for exercising its peremptory strikes against the following African-American jurors:

(a) The State explained that it struck Juror No. 1, an African-American female, because, when asked if Reese looked like someone who could commit a rape, she looked at the defendant "for a very extended period of time" before stating that "he did not look like someone who would have committed the rape because he seemed very content." The State explained that it did not want a juror who judged a defendant

---

[4] Because the prosecutor offered explanations for the State's strikes at step two of the *Batson* inquiry and the trial court ruled on the ultimate question of intentional discrimination at step three, we need not decide whether the court correctly decided at step one the prima facie showing of racial discrimination. See *Johnson v. State*, 302 Ga. 774, 779 (3) (b) (809 SE2d 769) (2018).

[5] In the argument portion of same enumeration of error, Reese also argues that the trial court erred by concluding that he did not make out a prima facie case of gender discrimination. Reese's "enumerations of error, however, do not include such a claim, and a party cannot expand his enumerations of error through argument or citation in his brief." See *Arnold v. State*, 253 Ga. App. 307, 308, n. 1 (560 SE2d 33) (2002).

5

based upon appearance alone. In response, Reese argued that a juror's demeanor was not a sufficient reason to strike them. The trial court then held that the State's reasons for striking were race-neutral. See, *Cooper v. State*, 220 Ga. App. 531, 531 (469 SE2d 790) (1996) (where defendant struck a white female because she "looked at the prosecution in a very accepting way during voir dire," the trial court did not err in accepting this as a race-neutral reason for a peremptory strike).

(b) The State explained that it struck Juror No. 5, an African-American female, because she stated that neither she nor her 21-year old daughter drank alcohol, that she believes that a victim assumes partial blame for an assault if it occurred while the victim was intoxicated, and that she could not understand why a victim of a crime would delay reporting it to the police. Reese made no argument as to why this reason was pretextual, and the trial court held that it was race-neutral.

(c) The State explained that it struck Juror No. 8, an older African-American female, because she was a very religious woman and the State believed that she would negatively judge a younger female who went downtown to consume alcohol. Reese objected to the strike on the grounds that religious beliefs are not an appropriate reason to strike a juror. The trial court ruled that the State's proffered reasons were race-neutral. See *Bryant v. State*, 288 Ga. 876, 883 (7) (708 SE2d 362)

(2011) (trial court did not err by concluding that State's explanation for using a peremptory strike against a prospective juror based on the juror's religious beliefs).

(d) The State told the trial court that it struck Juror No. 11, an African-American female, because she had a husband who had been convicted of murder by the same district attorney's office that was prosecuting the instant crime and because she had a relative who had been accused of sexual assault. Reese objected to these proffered reasons for the strike on the grounds that the juror expressed that she believed her husband and relative had been fairly treated by the criminal justice system. The trial court ruled that the State's proffered reasons were race-neutral. See *Henry v. State*, 265 Ga. 732, 733 (2) (462 SE2d 737) (1995) (trial court did not err by finding that State exercised its peremptory challenges against two prospective jurors for race neutral reasons because their family members had been prosecuted for felony offenses).

(e) The State told the trial court that it struck Juror No. 20, an African-American male, because his brother had recently been accused of statutory rape and because he believed that he had been racially profiled by law enforcement in Athens-Clarke County. It further noted that Juror No. 20 expressed a belief that a victim might be to blame for any assault against her if she had over-consumed alcohol. The

7

trial court ruled that the State's proffered reasons were race-neutral. See *Quillian v. State*, 279 Ga. 698, 701 (3) (620 SE2d 376) (2005) ("The State may reasonably base its use of a peremptory strike upon a prospective juror's apparent belief that, in general, law enforcement officers are racially motivated") (citation omitted).

(f) The State explained that is struck Juror No. 23, an African-American female, because she felt that she had been racially profiled by law enforcement when she was pulled over for speeding. She also described an experience where her brother experienced racial profiling by law enforcement when he was unfairly ticketed for running a red light. Juror No. 23 further expressed a belief that victims who consumed too much alcohol are partially to blame for sexual assault. The trial court found this explanation to be "valid[.]" See *Quillian*, 279 Ga. at 701 (3) (the State's explanation that it used a peremptory strike against an African-American juror because of juror's bad experiences with law enforcement and belief that police generally practice racial-profiling was race-neutral for purposes of *Batson* inquiry).

(g) The State explained that it struck Juror No. 27, an African-American female, because she had previously served on a rape jury that was unable to reach a verdict, she had previously been arrested for a DUI, and her brother had been arrested in the past. Reese objected on the grounds that participation on a hung jury was not

8

a valid reason to strike. The trial court ruled that the State's proffered reasons were race-neural. See *Henry*, 265 Ga. at 733 (2); *Richard v. State*, 223 Ga. App. 98, 98 (476 SE2d 849) (1996) (peremptory strikes based on a panel member's service on a prior "hung jury" in a criminal case was race-neutral for purposes of *Batson* inquiry).

(h) The State told the trial court that it struck Juror No. 28, an African-American female, because she explained that she did not believe her daughter's rape outcry because her daughter had a consensual sexual encounter with the assailant in the past such that "it wasn't rape to her any more." Juror No. 28 also disclosed that she had a brother who was a registered sex offender and that she believed that alcohol consumption could be a reason why a woman could become a victim of sexual assault. Reese did not object to the State's reasoning, and the trial court ruled that the State's proffered reason was facially race-neutral. See, e. g., *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993) (the State legitimately struck an African-American male because his son had been charged with a crime).

Here, we agree that the State's explanations for striking these jurors were facially race-neutral and therefore, they satisfied the second prong of the *Batson* analysis. See *Toomer v. State*, 292 Ga. 49, 55 (2) (b) (734 SE2d 333) (2012) ("[T]o carry the burden of production at step two, the proponent of the strike need not offer

9

an explanation that is concrete, tangible, or specific. The explanation need not even be case-related. The explanation for the strike only needs to be facially race-neutral") (citation and punctuation omitted.)

Next, "[i]f the proponent of the strike carries its burden [in the step two of the *Batson* analysis] by providing a race-neutral explanation for the peremptory strike, the trial court must advance to step three of the *Batson* analysis and decide whether the opponent of the strike has proven the proponent's discriminatory intent in light of all the circumstances that bear upon the issue of racial animosity." (Citation and punctuation omitted.) *Toomer*, 292 Ga. at 55 (2) (a).

On appeal, Reese appears to argue that the trial court failed to complete the third step of the *Batson* analysis because it failed to make an express finding as to whether purposeful discrimination was shown. Here, although the transcript shows that the trial court did not specifically state that it was expressly ruling on the third step of the *Batson* analysis, we conclude that it impliedly did so. See *Dunn v. State*, 304 Ga. 647, 651 (2) (821 SE2d 354) (2018) ("While the trial court did not expressly indicate that it was moving to step three of the *McCollum* analysis, we do not look merely at the nomenclature used during a colloquy, but at the totality of the discussion, including the trial court's inquiry").

10

A careful review of the record reveals that the trial court did not simply stop at step two of the *Batson* inquiry, but implicitly engaged in the third step. For each of the [African-American] jurors struck from the venire, the prosecution gave an ostensibly race-neutral explanation for the strike, which completed the second *Batson* step. The trial court then heard arguments from the defense about why the prosecutor's explanation was inadequate as to each juror. After hearing from both the prosecution and the defense, the trial court made its own findings (for each juror separately) about why it believed the prosecution's explanation was "race neutral," citing its own observations of the voir dire process and the jurors' demeanor. Only after hearing from both sides and laying out its own findings on the matter did the trial court deny the *Batson* challenge as to each juror. Thus, although the trial court used the term "race neutral" in its ultimate findings – a term usually empoyed in connection with the second *Batson* step – the record indicates that the court in fact assessed the totality of the circumstances and found no discriminatory intent in the State's use of the peremptory strikes, thereby completing the *Batson* inquiry.

(Citations and punctuation omitted.) *Coleman v. State*, 301 Ga. 720, 723 (4) (804 SE2d 24) (2017). We discern no clear error in this ruling. See *Heard v. State*, 295 Ga. 559, 567 (3) (761 SE2d 314) (2014) (finding no clear error where trial court denied defendant's *Batson* challenge "[a]fter finding that the State provided facially race-neutral reasons for the strikes"); *Hogan v. State*, 308 Ga. 155, 160 (2) (a) (839 SE2d

651) (2020) (Although the trial court used the phrase "race-neutral" in conducting the third step of the *Batson* analysis, "the use of the term 'race-neutral' cannot be read in isolation and is not dispositive of whether the trial court properly conducted" its analysis); *Wilbern v. State*, 230 Ga. App. 619, 623 (497 SE2d 380) (1998) ("[A]lthough a clearer record would allow us to rely less on implication and more on the actual findings of the trial court, based on this unclear record we cannot conclude that the trial court clearly erred").[6]

We are further unpersuaded by Reese's argument that the trial court erred in conducting the third step of the *Batson* analysis because the State struck African-American jurors while allowing similarly situated white jurors to remain. Reese points to several white prospective jurors who indicated that they believed that being intoxicated is not an excuse for failing to contact law enforcement if a crime is

---

[6] Reese argues that the forms the State used during voir dire to track the prospective juror's answers constitute evidence that the State's peremptory strikes were not race-neutral. Although these forms have a hand-written notation next to the jurors' names indicating "BM" (black male), "BF" (black female), "WM" (white male) and "WF" (white female), testimony at the motion for new trial hearing revealed that these notations on "race and gender . . . were made when we were in the law library [after the *Batson* challenge had been made] constructing the number of African-American and white or other race jurors and the genders of those jurors" to comply with the trial court's request. The State testified that both Reese's trial counsel and the prosecutors were present in the law library and made the notations in consultation together.

12

committed against you. However, the State set forth a race-neutral reason for striking the African-American prospective jurors who expressed similar beliefs that did not apply to the non-African American prospective jurors: Juror No. 5 did not drink alcohol, Juror Nos. 20 and 23 expressed that they believed they had experienced racial profiling by law enforcement in the past, and Juror No. 28 was related to a registered sex offender and did not believe her daughter's rape outcry. See *King v. State*, 273 Ga. 258, 269-207 (22) (e) (539 SE2d 783) (2000) (affirming the trial court's finding of no discrimination where the defendant argued that other jurors exhibiting one of the same factors cited by the State were not stricken, but where the State also cited other factors that did not apply to the seated jurors that contributed to its final decision to strike the juror).

Based upon the above, we conclude that the trial court did not abuse its discretion in denying Reese's *Batson* challenge to the State's peremptory strikes.

2. Reese's remaining enumerations of error cannot be considered because he has failed to support the claims of error with citations to the record, to relevant law or with any argument at all in his appellate brief. Accordingly, such enumerations have been deemed abandoned on appeal. See Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*