## S08A0660. POTTER v. THE STATE.
### (662 SE2d 128)

HINES, Justice.

Ralph Lamar Potter appeals his convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a crime, in connection with the death of Bradley Mitchum and the assault of Jason Chandler. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that six weeks before Mitchum was killed, Mitchum was driving a car with Chandler's uncle and another person in it when a car in which Potter was a passenger came up rapidly behind Mitchum's car and Mitchum said: "Oh my God, that's Junior"; "Junior" was an alias of Potter's. Mitchum was visibly shaken and said that "Junior" was going to kill him. Potter's car chased Mitchum's car for some time, bumping it several times, and Mitchum eventually drove down the long driveway of the residence of Chandler's grandmother, where Mitchum exited the car and ran away. Chandler's aunt emerged from the residence and asked what was going on; Potter exited his car and said: "that motherfucker owes me money and I'm going to kill him." Also, Potter struck Chandler's aunt with his hand. Potter sold crack cocaine, and Mitchum owed him $300 for drug purchases.

On the night he was killed, Mitchum was driving Chandler home when a car commonly driven by Potter came up behind them. After Mitchum turned into the driveway of Chandler's grandmother's home, several gunshots were fired into Mitchum's car from the rear; one struck Mitchum in the head. Mitchum asked what had happened, and Chandler told him that he appeared to have been shot; Chandler steered the car down to the end of the driveway, went inside, and telephoned the police. Potter was apprehended shortly thereafter, alone in his car near the crime scene, and Chandler identified Potter's

---

[1] The crimes occurred on May 2, 2006. On September 5, 2006, a Coweta County grand jury indicted Potter for malice murder, felony murder while in the commission of aggravated assault, aggravated assault of Mitchum, aggravated assault of Chandler, and possession of a firearm during the commission of the crime of murder. Potter was tried before a jury April 2-5, 2007, and found guilty of malice murder, both aggravated assaults, and possession of a firearm during the commission of the crime of murder; an order of nolle prosequi was entered on the charge of felony murder. On April 5, 2007, the trial court sentenced Potter to a term of life in prison for malice murder, a consecutive term of ten years in prison for the aggravated assault of Chandler, and a term of five years in prison for possession of a knife during the commission of a crime to be served consecutively to the aggravated assault term; the charge of aggravated assault of Mitchum merged with the malice murder. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). On April 17, 2007, Potter, pro se, filed a motion for a new trial; on April 24, 2007, counsel for Potter filed a motion for a new trial, and counsel amended the motion for new trial on November 12, 2007. The motion for new trial was denied on November 13, 2007. Potter filed a notice of appeal to the Court of Appeals on December 5, 2007; the Court of Appeals transferred the appeal to this Court on December 18, 2007, it was docketed in this Court on December 27, 2007, and submitted for decision on February 18, 2008.

car as that driven by the attacker. Mitchum died the next day. Shell casings from a .40 caliber pistol were recovered at the crime scene.

Potter was interviewed by a detective both before and after Mitchum died. During the first interview, Potter stated he was at home the previous night and knew nothing about the shooting. Because of a prior incident, the interviewing detective knew that Potter had a .40 caliber Glock pistol and asked him about it; Potter alternatively said that he had lost it, it had been stolen, and he did not know where it was.

During the second interview, after Mitchum's death, Potter acted remorseful and said that he had a dream in which he was riding down the highway and saw some taillights; gesturing to the detective, Potter then said "I just boom, boom, boom, boom." He also admitted to knowing Mitchum and stated that Mitchum owed him $300. Potter told the detective where he had recently fired his .40 caliber pistol for target practice; casings recovered from that site matched those found at the scene of the murder.

Before trial, Potter convinced a friend to testify falsely that he had seen Potter at 3:30 a.m. on the night of the shooting; the friend did so testify at a preliminary hearing, but at trial admitted that this was false testimony, and that he had not seen Potter at that time.

1. The evidence was sufficient to enable a rational trier of fact to find Potter guilty beyond a reasonable doubt of all of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Potter contends that no evidence regarding his statements to the police should have been admitted at trial. He concedes that he was properly given his *Miranda*[2] warnings and signed written waivers of his rights before the two interviews, but asserts that during his interviews with the detective, the public defender's office[3] was trying to gain access to him to determine if he qualified to be represented by that office and wished its services. However, this argument ignores the fact that Potter did not invoke his right to counsel, but in fact waived it; such right is " 'personal and must be invoked or waived by the individual defendant. [Cits.]' " *Bell v. State*, 280 Ga. 562, 565 (3) (629 SE2d 213) (2006). No attorney, acting without consulting Potter, was empowered to invoke a right of counsel for him. Id.[4]

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] At first, a non-attorney administrator with the public defender's office sought to interview Potter, then an attorney with the office attempted to do so.

[4] Potter asserts that the public defender's office had a duty to contact him at this time, see OCGA § 17-12-23 (b), and that while he was being interrogated by law enforcement personnel, a magistrate sought to have him produced for a first appearance. See Uniform Superior Court Rule 26.1. However, Potter's statements to the police were made in his first 30 hours of custody,

3. State's witness Chafin testified that a year before Mitchum was killed, she was walking with her husband on a street when Potter approached, stopped the vehicle he was driving, exited, put a pistol to Chafin's head, and said: "bitch, you got my money." Chafin inquired as to what money, and stated that she did not owe him money. Potter said: "you got till 5:00 o'clock or you're dead." Chafin's husband said he would get the money, and did so; the debt was for crack cocaine purchased three months earlier. The trial court permitted this evidence to be introduced as a similar transaction. See *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

Potter contends that this evidence should have been excluded as highly prejudicial and tainted because the State had agreed to dismiss a felony warrant for forgery against Chafin in exchange for her testimony. This agreement was disclosed on direct examination, and witness credibility is a matter for the jury, including whether any such agreements render testimony less creditworthy. *Yat v. State*, 279 Ga. 611, 612-613 (1) (619 SE2d 637) (2005). The court properly charged the jury on witness credibility and the use of similar transaction evidence and there was no error.[5]

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 2, 2008.

*Mark A. Hinds*, for appellant.

*Peter J. Skandalakis, District Attorney, Bruce P. Dutcher, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.

---

and there is no contention that the time limits set forth in OCGA § 17-12-23 (b) or Uniform Superior Court Rule 26.1 were not met.

[5] After the time for filing a brief and enumerations of error had passed, see Supreme Court Rules 10 and 19, Potter filed a "Supplemental and Amended Brief of Appellant," attempting to introduce two enumerations of error not in his original brief; no extension of time had been requested. See Supreme Court Rule 12. These untimely asserted enumerations of error will not be considered. *Smith v. State*, 267 Ga. 372, 378 (12) (477 SE2d 827) (1996); *Lynd v. State*, 262 Ga. 58, 60 (8) (414 SE2d 5) (1992). While under Supreme Court Rule 24 this Court will accept, up to the time of decision, supplemental briefs on issues timely presented, Supreme Court Rule 24 does not provide a mechanism by which a party may circumvent the requirement to timely submit his enumerations of error.