S16A0721. LANE v. THE STATE.
(792 SE2d 378)

</div>

HINES, Presiding Justice.

Rodney Lane appeals his convictions for the malice murder of Donald Dye and other crimes. For the reasons that follow, we affirm.[1]

---

[1] The crimes occurred on October 8, 2010. On January 5, 2011, a Fulton County grand jury indicted Lane for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and possession of cocaine with intent to distribute; on July 22, 2011, he was re-indicted on the same charges. Lane was tried before a jury December 6-8, 2011 and found guilty of all charges. On December 13, 2011, Lane was sentenced to life in prison for malice murder and consecutive prison terms totaling 45 years (as a recidivist) on those counts that did not merge with malice murder and were not vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Lane filed a motion for new trial on December 15, 2011, which he amended on November 14, 2014; on June 8, 2015, the motion,

Construed to support the verdicts, the evidence showed that Lane and Dye were next-door neighbors in an apartment complex. Around 4:40 a.m. on October 8, 2010, Dye, Bonnie Green, and Johnny Williams were outside the door of Lane's apartment; Lane had earlier called the police to complain about the noise of a larger group that had been outside his door. Lane emerged from the door of his apartment with a pistol-grip shotgun and fired, striking Dye. Dye exclaimed, "Rodney shot me, Rodney shot me, Rodney shot me." Another neighbor, Evelyn Grier, was awakened by the gunshot. She looked out the door of her apartment, saw Dye on the ground, and heard him say that his "neighbor next door" shot him. At 4:44 a.m., Grier called 911.

At the time of the shooting, David Neely, a visitor to the apartment complex who knew Lane, saw Lane emerge from his apartment with something in his hands; Neely heard a shot, saw Dye "hit the wall," and heard Dye say that he had been shot.

Law enforcement officers arrived and, with his consent, searched Lane's apartment for the shotgun and ammunition. While opening a drawer, the lid of a cigar box therein came open, revealing cocaine and packaging materials in the box; the cocaine had a solid material weight of over 24 grams. Natasha Dennis and her son were also inside the apartment; Dennis denied the cocaine was hers, and she was permitted to leave. Lane's sister told an investigator that Lane sold crack cocaine, smoked his own product, and sometimes became paranoid after doing so.

At trial, Lane testified that: he came out of his apartment with a shotgun because he heard people suggesting that a gunshot should be fired into his home because he had earlier called the police to quiet those who were speaking outside his door; he asked Dye where they were; Dye made some joking response; Lane reached back toward the door; "the shotgun discharged" accidentally; he did not know that anyone was struck by the gunfire; he put the shotgun by the door; he went back inside to see if the gunshot had woken his child or her mother; and he lied to investigators, telling them that while he was inside his apartment, he heard a shotgun blast and heard someone running away.

1. The evidence authorized the jury to find Lane guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[2]

---

as amended, was denied. Lane filed a notice of appeal on June 18, 2015, the appeal was docketed in this Court for the April 2016 term, and submitted for decision on the briefs.

[2] Lane's brief in this Court was filed by his appellate attorney on March 3, 2016; on June 3, 2016, this Court granted appellate counsel's motion to withdraw from representing Lane. On June 6, 2016, Lane sent a pro se "Motion to Amend Motions that was Send to be Filed [sic]." To

2. On August 29, 2011, the trial court entered an order specially setting trial for December 5, 2011; the order specified that no continuances would be granted.[3] At a pretrial hearing on December 1, 2011, Tawanna Payton, Lane's appointed trial counsel, informed the court that Lane was unwilling to communicate with her and that she was unable to prepare Lane for trial, and asked for a continuance; Payton also informed the court that Lane's family was attempting to retain counsel for Lane. The court observed that Lane had ample opportunity to cooperate with counsel, stated that Lane would not be allowed to control the court's calendar, and reiterated that trial was set for Monday, December 5, 2011. During the hearing, the prosecutor noted that Lane had been found competent to stand trial and opined that Lane's lack of cooperation was simply a delaying tactic, as the eyewitnesses who saw him shoot Dye had known Lane for years, and Lane simply did not want to be held responsible for his actions. Also during the hearing Lane said: "I don't know what she talking about. The [expletive] voices saying [Payton is] a demon, and I ain't working with no demon, I'm not working with a demon."

At the beginning of the proceedings on December 5, 2011, Payton told the court that, since the December 1, 2011 hearing, Lane had made statements to her that she needed to investigate, and that she would be ineffective in her representation of Lane if she had to proceed without conducting that investigation, and again asked for a continuance. The court asked the State to review the history of the case, and the State said that Lane had made a demand for a speedy trial, that at a prior call of the case, the State announced that it was ready for trial, but after an ex parte request by Lane's then-attorney, a continuance was granted on Lane's motion, a psychological evaluation was requested and ordered, and the speedy trial request was withdrawn. The State also asserted that Lane's prior lack of cooperation with Payton would not warrant a continuance as he had ample opportunity to discuss the case with her, and suggested that the court conduct an ex parte review of the information newly provided to Payton to determine if it warranted a continuance.

The court cleared the courtroom except for court personnel and the defense team, and Payton told the court that Lane had given her information that introduced the defense of accident, which had not previously been an issue in the case, and that a continuance was

---

the extent that this document attempts to introduce enumerations of error beyond those raised in Lane's original brief in this Court, the document is untimely, and those additional enumerations of error will not be considered. See *Potter v. State*, 283 Ga. 576, 578 n. 5 (662 SE2d 128) (2008).

[3] The trial court had previously granted Lane a continuance.

needed to secure an expert to determine if the shotgun could have misfired; she also stated that Lane heard voices and, although he had been found competent to stand trial, a continuance should be granted to allow an examination to determine whether he could be held criminally responsible. Payton also informed the court that Lane did not want her to represent him, and that Lane's family had retained an attorney, who was present. Upon being addressed by the court, that attorney, Joyette Holmes, stated that she was "prepared to enter an appearance . . . and get up to speed as quickly as possible." The court ruled, however, that no continuance would be granted as Lane caused any delay by his attempt to present new counsel the day of trial, and that any belief Payton had that she was not able to proceed with trial was due to Lane's unwillingness to communicate with her until the eve of trial. Payton represented Lane in the ensuing trial.

Lane asserts that it was error for the court to deny a continuance to allow Holmes to prepare for trial so that Lane could have retained counsel of his choosing. Pretermitting whether, at the time of trial, Lane communicated to the court that Holmes was *his* choice of counsel, and not merely the choice of a family member, "[w]hile every defendant has the right to hire counsel, [a] defendant must use reasonable diligence in obtaining retained counsel. A defendant may not use a request for change of counsel as a dilatory tactic." *Davis v. State*, 295 Ga. 168, 169 (2) (758 SE2d 296) (2014) (Citations and punctuation omitted.) " 'A refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard.' [Cit.]" *Rivers v. State*, 250 Ga. 303, 307 (5) (298 SE2d 1) (1982).

On December 1, 2011, the trial court warned Lane that the scheduled trial date of December 5, 2011, would not be changed, and reiterated that point when the State noted that the case had been "specially set six weeks ago,"[4] providing Lane's family with that amount of time to obtain additional counsel. In such circumstance, it was not error to deny the motion for a continuance. *Davis*, supra at 169-170. See also *Rivers*, supra (no abuse of discretion in denying a continuance when the defendant refused to cooperate with counsel until shortly before trial).

3. Lane contends that his trial counsel was ineffective in failing to adequately prepare for trial, and in failing to impeach State's witness Williams with evidence that he had been previously convicted of multiple felonies. See former OCGA § 24-9-84.1 (a) (1). In

---

[4] In fact, the order specially setting the case for trial was filed on August 29, 2011, which was fourteen weeks prior to the December 5, 2011 trial date.

order to prevail on a claim of ineffective assistance of counsel, Lane must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case, id. at 784, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. *Redding v. State*, 297 Ga. 845, 850 (5) (778 SE2d 774) (2015). To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. *Smith*, supra at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

We first note that during the hearing on his amended motion for new trial, Lane did not produce any testimony of his trial counsel, and that in such circumstance, "it is extremely difficult to overcome the strong presumption that counsel's performance was reasonable. [Cit.]" *White v. State*, 281 Ga. 276, 281 (637 SE2d 645) (2006). As to the issue of counsel's alleged failure to prepare for trial, although Lane notes that, before trial, counsel stated that she believed that she was not prepared for trial and would be providing ineffective assistance of counsel if she proceeded without a continuance to investigate the newly-raised claim of accident, counsel's pretrial speculation regarding what preparation would be required does not equate to a post-trial conclusion that her ultimate representation was, in fact, unreasonable. *Sims v. State*, 278 Ga. 587, 590, n. 6 (604 SE2d 799) (2004). Further, even a post-trial evaluation by counsel that her performance was deficient would have limited value, see *Lockhart v. State*, 298 Ga. 384, 386 (2) (782 SE2d 245) (2016) ("even counsel's own hindsight 'has no place in an assessment of the performance of trial counsel . . .' [Cit.]"), and, in any event, Lane presents no evidence, or even assertion, as to what further investigation or preparation might have produced that would have made a difference in the outcome of his trial. Consequently, Lane fails to show ineffective assistance of trial

counsel on this ground. *Peterson v. State*, 284 Ga. 275, 277 (663 SE2d 164) (2008).

Similarly, as Lane failed to produce any evidence of the circumstances surrounding counsel's failure to impeach Williams with his prior convictions, he has made it extremely difficult to overcome the presumption that counsel's performance in this regard was reasonable. *White*, supra. But, even if Lane could show that counsel's failure to impeach Williams was the result of deficient performance, he fails to meet the second prong of the required test. Given the evidence against Lane, which included the testimony of other eyewitnesses to the shooting, the cross-examination of Williams that counsel did conduct,[5] and Lane's testimony that he did, in fact, shoot Dye, albeit by accident, despite his initial denial of any involvement, there is no reasonable probability that the result of Lane's trial would have been different. See *Williams v. State*, 292 Ga. 844, 852-853 (3) (e) (742 SE2d 445) (2013); *Sanders v. State*, 290 Ga. 637, 641-642 (5) (723 SE2d 436) (2012).

*Judgments affirmed. All the Justices concur.*

<div align="center">DECIDED OCTOBER 17, 2016.</div>

Rodney Lane, *pro se.*

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.

---

[5] Counsel cross-examined Williams regarding his addiction to crack cocaine for more than 30 years, his use of crack cocaine on the night of the shooting, the fact that he was sometimes paranoid when he smoked crack cocaine, and that he would steal in order to support his cocaine habit.