305 Ga. 251
FINAL COPY

S18A1429. MOORE v. THE STATE.

ELLINGTON, Justice.

Raemon Moore was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Asiel Parker.[1] On appeal, he contends that his convictions should be reversed because the trial court erred in admitting into evidence video recordings without proper authentication and because his trial counsel was ineffective. Finding no

---

[1] The murder occurred on July 17, 2012. On November 9, 2012, a Fulton County grand jury indicted Moore for participation in criminal street gang activity, malice murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Shortly before trial, the State learned that Moore was not, in fact, a convicted felon. Therefore, on August 18, 2014, an order of nolle prosequi was entered on the count of possession of a firearm by a convicted felon and the count of felony murder predicated thereon. On August 20, 2014, the jury found Moore guilty of the remaining charges, and the court entered a final disposition order which it later amended. Moore filed a motion for new trial on October 13, 2014, which was amended by new counsel on March 3, 2017. On May 5, 2017, after an evidentiary hearing, the court granted the motion in part, setting aside Moore's conviction for criminal street gang activity. The court denied the remaining grounds. On that same date, the trial court entered an amended final disposition order, imposing life imprisonment for malice murder, merging the aggravated assault count into the murder conviction, imposing a five-year consecutive term of imprisonment for possession of a firearm during the commission of a felony, and noting that the remaining felony murder count had been vacated by operation of law. Moore filed a timely notice of appeal, and his case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

reversible error, we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial shows the following. During the early afternoon of July 17, 2012, two groups of people ran into each other at the West End Mall in Fulton County. Moore, known as "Killer Ray" to his friends, was in one group. Parker was in the other group. During the course of conversation, an argument broke out between Parker and Bailey Harper. Harper, who was with Moore's group of friends, wore a "True Viking" shirt identifying him as a member of the "Good Fellows" gang. After several heated exchanges, Parker and Harper decided to take their argument outside. Eddie Jones, a mutual friend of Harper and Parker, walked with them, trying to keep the peace.

Once outside, Harper took Jones' advice to "let it go" and walked off through the parking lot. Moments later, four shots rang out, and bullets shattered the windows of a Subway sandwich shop. Jones, who was standing a few feet from Parker, testified at trial and identified Moore as the person he saw firing a black pistol at Parker. A witness who was in the parking lot saw people fleeing the mall as a man wearing a blue hat walked from the mall, firing a black pistol toward the sandwich shop. At trial, the witness identified Moore from the mall

surveillance video as the shooter. Additionally, Harper selected Moore's photograph from a police photographic lineup and gave a statement to investigators identifying "Killer Ray" as the shooter, although he later recanted his identification at trial. Immediately after the shooting, witnesses saw Moore get into the passenger side of a silver or light-colored car that sped away from the mall. Parker, fatally wounded by two of the bullets fired, died later that day at Grady Hospital.

After the shooting, investigators took witness statements, gathered physical evidence, and obtained security camera video recordings from the West End Mall. After Harper told an investigator that "Killer Ray" was in a gang called Good Fellows, the investigator sought the assistance of a detective with the Atlanta Police Gang Intelligence Unit to find the shooter. The detective found two rap videos on YouTube showing Moore in his "Killer Ray" gang persona. These videos, which were played for the jury, showed Moore and others rapping while wearing True Viking clothing that identified them as members of the Good Fellows gang. Through these videos, the expert was able to identify "Killer Ray" as Raemon Moore and to obtain his phone number. The expert opined at trial that Parker's murder constituted criminal gang activity

3

because Moore likely shot Parker for showing disrespect to Harper. After witnesses came forward identifying Moore as the shooter, investigators took out a warrant for his arrest. During a traffic stop on August 15, 2012, an officer arrested Moore.

1. Moore does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Moore guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. Moore contends the trial court erred in admitting into evidence video recordings that were not properly authenticated. Specifically, he challenges the

4

admission of the YouTube rap videos and the mall surveillance videos.[2] "We review the trial court's decision to admit evidence for an abuse of discretion." *Bolling v. State*, 300 Ga. 694, 698 (2) (797 SE2d 872) (2017).

(a) *YouTube video recordings*. Moore contends that the admission of unauthenticated YouTube videos offered in support of the criminal gang activity charge was harmful and requires the reversal of all of his convictions.[3] We disagree.

At trial, the State called a detective with the Atlanta Police Gang Intelligence Unit to testify. The detective was accepted by the trial court as an

---

[2] The video recordings at issue have not been made part of the record on appeal. However, still photographs taken from the mall surveillance videos were admitted at trial and included in the record. Additionally, the trial court described the YouTube videos in a pre-trial order as follows:

> The State seeks to admit two YouTube videos purporting to connect Defendant to one or more gangs. Each is roughly three minutes in length and each depicts Defendant and others smoking, singing, talking, and displaying what the State contends are gang-related signs, symbols, and paraphernalia. In one, the group refers to itself as the "Goodfellaz" and Defendant is briefly identified as "Killa Ray", a nickname already relevant to this case through the identification made by an eyewitness. In the other, Defendant is featured much more prominently, although the group appears to call itself "True Viking." There is no overt criminal activity contained in the videos: they depict young men smoking, drinking, singing and otherwise standing around; no guns are brandished and, while the language is colorful, no admissions are made other than the admission of membership in whatever groups "Goodfellaz" and "True Viking" may be.

[3] Although Moore contends that his trial counsel failed to object to the YouTube video evidence, the record shows that counsel lodged an objection to the video recordings and sufficiently stated the basis for it, thus preserving this claim of error for our ordinary appellate review. See OCGA § 24-1-103 (a) (1).

expert in criminal street gangs and gang activity. The detective testified about a street gang known as Good Fellows or "GF," a group he investigated in relation to this case and the count of criminal gang activity. The detective testified that, based on his research, which included interviews with known gang members and crime victims, he learned that "Killer Ray" was Moore's gang moniker and that Moore and Harper were both members of Good Fellows. In support of the detective's testimony, the State presented the YouTube videos and a few still images taken from those videos. The detective testified that he found the YouTube videos when searching the Internet for information on "Good Fellows" and "Atlanta." The detective noted that, in the recordings and still images, Moore and Harper wore clothing identifying them as affiliates of Good Fellows. Further, the imagery and graffiti "tagging" in the videos as well as rap lyrics sung by Moore and others were intended to "show everyone who they are" and to intimidate the public, rival gangs, and even fellow gang members who might break their code of silence.

At trial and in the order on Moore's motion for a new trial, the trial court found that the State had laid a sufficient foundation for the admission of the videos. Although the trial court ultimately set aside Moore's conviction on the

charge of criminal gang activity, it did so based on its finding that the evidence failed to show the requisite "nexus between [Moore's] crimes and furtherance of [the gang's] interests[,]" not that the video evidence was unauthenticated. The trial court also found that "even if some of the gang evidence was admitted in error," it was highly probable that any erroneous ruling by the trial court with respect to Moore's criminal gang activity did not contribute to the verdict.

Pretermitting whether the trial court properly found that the YouTube videos and related still images had been properly authenticated, any error in the admission of that evidence was harmless to Moore on the counts of malice murder and possession of a firearm during the commission of a felony, the crimes for which he was convicted and sentenced. Several eyewitnesses saw Moore at the scene of the murder, one saw him shoot Parker, and several witnesses were able to identify him as the shooter from the mall surveillance videos. Considering the strong evidence that Moore shot Parker to death, we conclude that it is highly probable that any erroneous evidentiary ruling by the trial court with regard to Moore's criminal gang activity did not contribute to the jury's verdicts. See *Brown v. State*, 300 Ga. 446, 447-448 (2) (796 SE2d 283) (2017); see also *Smith v. State*, 299 Ga. 424, 431-432 (2) (d) (788 SE2d 433)

(2016) (explaining that OCGA § 24-1-103 (a) of the new Evidence Code continues the preexisting harmless error doctrine in Georgia). As such, Moore's contention that his convictions must be reversed has no merit.

(b) *Surveillance video recordings*. Moore did not object to the admission of the mall surveillance video recordings and still photographs taken from those videos at trial. Where an appellant fails to make an objection to the admission of evidence in the trial court, the claim of error is not preserved for ordinary appellate review. See OCGA § 24-1-103 (a) (1); *Anthony v. State*, 302 Ga. 546, 549 (II) (807 SE2d 891) (2017) ("An issue that is not presented or ruled on by the trial court is not preserved for appellate review." Thus, we may review Moore's claim, but only for plain error. See OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). To satisfy the test for plain error, Moore must show, among other things, the existence of an error. *Wilson v. State*, 301 Ga. 83, 88 (2) (799 SE2d 757) (2017). Moore failed to make that showing.

Under Georgia law, "[g]enerally, a videotape is admissible where 'the operator of the machine which produced it, or one who personally witnessed the

events recorded[,] testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred.'" *Sowell v. State*, 327 Ga. App. 532, 536 (1) (759 SE2d 602) (2014), quoting *Phagan v. State*, 268 Ga. 272, 281 (5) (486 SE2d 876) (1997).[4] See also *Birdsong v. Barnett*, 334 Ga. App. 120 (778 SE2d 372) (2015) (A video recording was properly admitted under OCGA § 24-9-923 (c), as the complaining witness testified that she personally transferred the video from her home security system to the disc she presented to the court and that the video accurately depicted the incident on the date in question.).

In this case, the record shows that the State presented the testimony of eyewitnesses to the events to authenticate the two mall surveillance video recordings, State's Exhibits 3 and 4, and the still images taken from them. With respect to State's Exhibit 3, an eyewitness to the shooting testified that the video accurately depicted the mall and Subway sandwich shop next door to the make-

---

[4] Although these cases were decided under former OCGA § 24-4-48, the provisions of that Code section were "carried forward into the new Evidence Code" in OCGA § 24-9-923. *Rodriguez-Nova v. State*, 295 Ga. 868, 869 (2), n. 3 (763 SE2d 698) (2014). This new Code section has no counterpart in the Federal Rules of Evidence. "If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies." *State v. Almanza*, 304 Ga. 553, 557 (2) (820 SE2d 1) (2018).

up studio where she was working on the day of the shooting. The video also accurately showed the movements of several people, including herself, who were involved in the events associated with the shooting. With respect to State's Exhibit 4, a witness testified that she was familiar with the video, had viewed it prior to trial, and that it fairly and accurately depicted what happened on the day of the shooting, including the movements of the individuals involved in the shooting, including herself. Several still images taken from the videos also display date and time stamps that correspond to witness testimony about the date and time of the shooting. Given that the State adduced evidence sufficiently authenticating the mall surveillance videos, they were admissible. Thus, Moore has failed to show error — much less plain error — in the court's admission of that evidence.

3. Moore contends that his trial counsel's failure to object to the admission of the video evidence discussed in Division 2 deprived him of the effective assistance of counsel. To prevail on his claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), Moore must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. To prove

deficient performance, he "must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). The prejudice prong requires a defendant to show "a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." (Citations and punctuation omitted.) *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009). "If an appellant fails to meet either prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong." *Dunn v. State*, 291 Ga. 551, 553 (4) (732 SE2d 524) (2012).

In this case, Moore has failed to show that his trial counsel's performance was deficient. Contrary to what he claims in his brief, the record shows that counsel objected to the YouTube videos. Further, even though he posed no objection to the mall surveillance videos, the record shows that they were properly authenticated and that the trial court would have been authorized to overrule an objection on this ground based on the evidence presented by the State. See *Duvall v. State*, 290 Ga. 475, 477 (2) (b) (722 SE2d 62) (2012) (trial counsel cannot be deficient for failing to lodge a meritless objection).

11

Consequently, given that Moore has failed to show deficient performance, the trial court correctly held that he failed to show ineffective assistance of trial counsel. See *Romer v. State*, 293 Ga. at 344 (3).

Judgment affirmed. All the Justices concur.

Decided February 18, 2019.

Murder. Fulton Superior Court. Before Judge McBurney.

Charles H. Frier, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.