**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 15, 2020**

# In the Court of Appeals of Georgia

A20A0228. SHAUM v. THE STATE.

MERCIER, Judge.

A jury found Robert Allen Shaum guilty of criminal attempt to commit child molestation and criminal attempt to entice a child for indecent purposes. Following the denial of his motion for new trial, Shaum appeals, asserting several claims of error. We discern no reversible error and affirm.

Shaum was initially charged with child molestation, tampering with evidence, criminal attempt to commit child molestation, and criminal attempt to entice a child for indecent purposes. He was tried and acquitted of child molestation, and a mistrial was declared as to the remaining counts after the jury was unable to reach a verdict. The tampering with evidence count was later nolle prossed, and the State retried Shaum on the criminal attempt counts about a week after the mistrial was declared.

Viewing the evidence presented at Shaum's second trial in favor of the verdict, the record reveals that Shaum's 10-year-old granddaughter M. N. went to visit him and his wife for the summer. At the end of the summer, M. N.'s mother (Shaum's daughter ) and her mother's boyfriend moved into Shaum's home. Due to the limited space in the home, M. N. began to sleep in the bedroom with Shaum and his wife. M. N. had a bed, and her grandparents had a bed.

After dinner one night, Shaum handed M. N. a typed, folded note while she was in the kitchen.

The note read:

[M. N.]; i dont know why i feel left out of your love. maybe its the age but that has nothing to do with it. i look at you as a young lady, not a little kid. you dont know how much i love you. if you would only give it a chance. oh i know it wont be a life time but it wiuld be a gift to me. your love to me. i just want to lay in bed beside you and carress your body to mine. just to be able to fill your love would be fantastic. it would be moments that you couldnt explain. let me feel your body with your love for me. i swear that ill never hurt you. [M. N.], i love you so much but you seem to make a joke of everything. like you dont care at all. [M. N.], just tell me or show me. no one will ever know except you and me, i promise.

M. N. went to her bed to read the note. She then placed the note in her mother's room instead of giving it to her because she did not want to "freak [her mother] out." M. N. explained at trial that the note made her feel "weird," and that Shaum had given her other typed notes that summer, but that she did not read them and threw them away. In M. N.'s forensic interview conducted shortly after the incident, in addition to making statements concerning the note, M. N. stated that on one occasion that summer, Shaum "grabbed" and "squeezed" her buttocks. She explained that when it happened, she "just kept walking like really fast because I wanted him to let go. It was like the weirdest feeling ever."

The State also presented evidence that Shaum had engaged in sex acts with his two daughters, M. N.'s mother and aunt, when they were children. M. N.'s aunt testified that Shaum started having sexual contact with her when she was about 7 or 8 years old that escalated to sexual intercourse when she was 15 years old, and that during that time Shaum often handed her handwritten notes telling her to do things, such as "come to my room later." The aunt explained that Shaum fathered two of her children. Following the presentation of this evidence, the jury found Shaum guilty on both counts. The trial court denied his motion for new trial, and this appeal followed.

1. Shaum argues that the evidence was insufficient to sustain his convictions and that the trial court erred in denying his motion for a directed verdict. He argues that there was no medical evidence or outcry, M. N.'s testimony was tainted by a conversation she overheard and bolstered by the admission of her forensic interview, there was evidence that others had access to a computer for typing the note, and there was no evidence beyond the note that he took a substantial step toward completion of the underlying crimes.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1]

*Washington v. State*, 251 Ga. App. 206, 206-207 (1) (553 SE2d 855) (2001).

Shaum was charged with criminal attempt to commit both child molestation and enticing a child for indecent purposes. OCGA § 16-4-1 provides that "[a] person

---

[1] 443 U. S. 307, 318 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

4

commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." Criminal attempt "consists of three elements: first, the intent to commit the crime; second, the performance of some overt act toward[ ] the commission of the crime; and third, a failure to consummate its commission." *Martin-Argaw v. State*, 343 Ga. App. 864, 864-865 (1) (806 SE2d 247) (2017) (citations and punctuation omitted). Therefore, the State had to show that Shaum had the intent to commit the crimes and that he took a substantial step toward doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or [himself]," OCGA § 16-6-4 (a) (1), and a substantial step toward "solicit[ing], entic[ing], or tak[ing] any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a).

There was evidence presented that Shaum had sexual contact and/or sexual intercourse with his daughters when they were children, with one of the daughters giving birth to two of his children, and evidence that he previously touched M. N. inappropriately. Shaum gave M. N. a note while she was in the kitchen in which he lamented the age difference between them, expressed that he wanted to lay in bed

5

with her and caress her body, and requested that she let him "feel [her] body" as a "gift" to him and "show [him]" she cares. This evidence was sufficient to establish that Shaum had the intent to commit the crimes and that he performed a substantial step toward an indecent act with M. N. (child molestation) and a substantial step toward persuading her to go bed with him for the purpose of an indecent act (enticing a child) as charged in the indictment, neither of which was consummated. See *Lopez v. State*, 258 Ga. App. 92, 94-95 (572 SE2d 736) (2002) (evidence sufficient to establish attempt to commit child molestation where defendant visited child, offered her money, stuck his hand in the front pocket of her pants, and gave her a note that expressly stated he wanted to "make love" to her); *Wittschen v. State*, 259 Ga. 448, 449 (1) (383 SE2d 885) (1989) (evidence that defendant asked girls if they wanted some money and when they responded affirmatively, he asked them to let him stick his hand down their pants, was sufficient to sustain conviction for attempt to commit child molestation). See also *Tudor v. State*, 320 Ga. App. 487, 491-493 (2) (740 SE2d 231) (2013) (slight movement of the victim satisfies the asportation element of enticing a child for indecent purposes; movement from living room sofa to kitchen was sufficient asportation for enticement); compare *Heard v. State*, 317 Ga. App. 663,

666 (731 SE2d 124) (2012) (no evidence that defendant attempted to persuade victim to go to another place).

2. Shaum contends that the trial court improperly allowed the State to present evidence that bolstered M. N.'s credibility. He argues that the admission of the forensic interview (compounded by allowing the jury to have the transcript of the interview), went beyond establishing M. N.'s ability to distinguish between the truth and falsehood. However, Shaum did not object to the admission of the forensic interview on this ground at trial.[2] "Where an appellant fails to make an objection to the admission of evidence in the trial court, the claim of error is not preserved for ordinary appellate review." *Moore v. State*, 305 Ga. 251, 255 (2) (b) (824 SE2d 377) (2019). See OCGA § 24-1-103 (a) (1). We therefore review Shaum's claim only for plain error. See OCGA § 24-1-103 (d).

The first step of the plain error analysis requires us to consider whether Shaum has shown the existence of an error in the admission of the forensic interview. *Moore*, supra. Pursuant to Georgia's Child Hearsay Statute, a statement made by a child younger than 16 years old describing an act of sexual contact

---

[2] Counsel stated: "I have no objection to the [jury receiving the forensic interview] transcript. I will for child hearsay purposes object to confrontation, *Crawford* and hearsay."

7

performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if . . . such child testifies at the trial, . . . and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

OCGA § 24-8-820. The statute "actually contemplates testimony from both the child and those witnessing the child's later reaction, *even if the hearsay may be bolstering*." *Jackson v. State*, 344 Ga. App. 618, 621 (2) (a) (810 SE2d 672) (2018) (citation and punctuation omitted; emphasis supplied). In her forensic interview, then 11-year-old M. N. described Shaum's act of squeezing her buttocks, which made her feel "weird," and his act of giving her a note in which he stated that he wanted to lie in bed with her and caress and "feel [her] body." Both M. N. and the forensic interviewer testified at trial, and both were subjected to cross-examination regarding the statements. There was therefore no error, much less plain error, in the admission of M. N.'s forensic interview, as it satisfied the requirements of OCGA § 24-8-820. See *Cornell v. State*, 349 Ga. App. 883, 884-885 (2) (827 SE2d 63) (2019) (child victim's out-of-court statements admissible where state provided notice of its intent to use the statements, the victim testified at trial, and the persons to whom the victim made the statements

8

were subject to cross-examination at trial; while defendant did not question the victim about her out-of-court statements, he was not precluded from doing so); see also *Carolina v. State*, 276 Ga. App. 298, 302 (3) (623 SE2d 151) (2005) (sexual contact for purposes of Child Hearsay Statute can be merely verbal). Further, trial counsel stated specifically that she had no objection to the jury having a transcript of the forensic interview. Plain error does not even apply to such an affirmative waiver. *McAllister v. State*, 351 Ga. App. 76, 88-89 (3) (830 SE2d 443) (2019). Therefore, this portion of Shaum's argument presents nothing for review. Id.

3. Shaum asserts that the trial court erred in refusing to grant him a continuance after the first trial ended in a mistrial so that he could hire his own counsel. He asserts that a "fresh set of eyes reviewing the transcripts of the just completed jury trial . . . could have produced a different result in a second trial had new counsel been able to have time to get into the case." A refusal to grant a continuance will not be disturbed by the appellate courts unless it clearly appears that the trial court abused its discretion. *Lane v. State*, 299 Ga. 791, 794 (2) (792 SE2d 378) (2016).

Shaum's second trial started approximately one week after the first trial ended in a mistrial. His appointed counsel, who had also represented him in the first trial, informed the court that Shaum was "requesting a continuance so that he can look into

9

hiring another lawyer who can either represent him or at least review the transcripts at this particular time." Shaum explained that his family members told him not to plead guilty. The trial court informed Shaum "that's not what we're here for," and that Shaum must have "legitimate, legal grounds for continuance other than to delay and read some transcripts." Trial counsel then asked Shaum if he was satisfied with her representation of him at the first trial, and Shaum responded, "[y]es and no." When the trial court asked for a specific reason, counsel explained to the court that Shaum "just would like a different lawyer." The court then denied Shaum's request for a continuance.

"[W]hile every defendant has the right to hire counsel, a defendant must use reasonable diligence in obtaining retained counsel. A defendant may not use a request for change of counsel as a dilatory tactic." *Lane*, supra, 299 Ga. at 794 (2) (citation and punctuation omitted). See OCGA § 17-8-20 ("In all cases, the party making an application for a continuance must show that he has used due diligence."). Although there was only about a week between trials, Shaum did not explain why he waited until the start of the second trial to seek to hire new counsel and he did not articulate why he was partially displeased with appointed counsel's performance in the first trial. Under these circumstances, we cannot say that the trial court abused is

discretion in denying Shaum's last-minute request for a continuance. See *Stephens v. State*, 208 Ga. App. 620, 620-621 (1) (431 SE2d 422) (1993) (defendant gave no reason why he waited until the day of trial to hire new counsel, stating only that he felt "'mighty incompetent'" with appointed counsel; no indication in record that tactic was other than attempt to delay trial). See also *Jordan v. State*, 247 Ga. App. 551, 555 (3) (544 SE2d 731) (2001) (no abuse of discretion in trial court's denial of defendant's request for a continuance to hire new counsel made five days before trial, where defendant failed to articulate any basis for his dissatisfaction with trial counsel and failed to show how a continuance would have affected the outcome of the trial).

4. Shaum complains that the trial court denied his motion for new trial on a ground he did not raise – ineffective assistance of counsel. In the order denying Shaum's motion for new trial, the court found that "[a]lthough ineffective assistance of counsel was not directly presented as an issue, the amended motion for new trial ... allege[d] that [Shaum] wanted another attorney and was not entirely satisfied with the performance of trial counsel[.]" The court found further that Shaum presented no additional evidence at the hearing on the motion for new trial concerning his counsel's performance at the second trial and concluded that counsel "rendered reasonably effective assistance."

11

Shaum did not specifically enumerate ineffective assistance of trial counsel as a ground in his motion for new trial as originally filed. However, in his amended motion for new trial, and during the hearing on the motion, Shaum's (new) appellate counsel argued that his "yes and no" response to the question of whether he was satisfied with trial counsel's representation "was a clear signal" that Shaum and trial counsel "had a conflict," and Shaum should have been allowed time to hire new counsel. As the trial court concluded, any assertion concerning trial counsel's performance was therefore raised by Shaum. The trial court did not err in addressing ineffective assistance of counsel to the extent it was raised.

5. Shaum asserts that the trial court erred in allowing M. N. to testify about the notes that she did not read and threw away, because they were not produced as evidence or properly authenticated, and were hearsay. He argues that the notes may have been written by other persons and that the evidence showed, at best, that he was merely a courier for the notes. However, M. N. did not testify about the other notes on direct examination. Shaum's trial counsel specifically asked M. N. about the other notes during cross-examination. Shaum "cannot purposefully elicit testimony at trial, and then claim on appeal that the trial court erred in admitting that same testimony." *Phillips v. State*, 275 Ga. 595, 599 (6) (571 SE2d 361) (2002). Further, M. N. testified

12

to what she personally observed, so her testimony concerning the notes and the notes themselves were not hearsay. See, e.g., *Hammock v. State*, 311 Ga. App. 344, 345 (1) (715 SE2d 709) (2011) (witnesses' testimony concerning what appeared on videotape was not hearsay, but rather concerned personal observations). This claim of error is therefore without merit.

6. Shaum argues that the trial court erred in refusing his counsel's request to pose a particular question to the jury panel during voir dire. The State filed a notice that it was seeking to admit evidence of other acts pursuant to OCGA §§ 24-4-404, 24-4-413, and 24-4-414. Aware from the first trial that this evidence would reveal that Shaum had molested his daughters when they were children and had fathered two of his grandchildren, trial counsel requested permission to ask the panel members if they would be able to give Shaum the presumption of innocence with knowledge of those acts. The parties acknowledged that trial counsel was allowed to ask this question during voir dire in the first trial. Nevertheless, the trial court ruled that it would not permit trial counsel to pose the question, explaining that it was not going to allow counsel "to try [her] case during voir dire."

"Since there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice, the scope

13

of the voir dire examination, of necessity, must be left to the sound discretion of the trial court." *Sallie v. State*, 276 Ga. 506, 510 (3) (578 SE2d 444) (2003). But "[w]hile trial judges have discretion to oversee jury selection, the Supreme Court of the United States has held that due process requires that voir dire be sufficient to allow the parties and the trial court to elicit juror bias." *Slack v. State*, ___ Ga. App. ___ (1) (841 SE2d 231) (2020) (citation and punctuation omitted). Pursuant to OCGA § 15-12-133, a party may

> inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties thereto, and the religious, social, and fraternal connections of the prospective juror.

However, even if the trial court abused its discretion in refusing to allow the question trial counsel sought to pose, Shaum cannot show harm because the full voir dire was not transcribed. The only portion transcribed was further questioning by the parties of particular jurors who raised their hands in response to initial questioning.

14

Therefore, even if the court erred in refusing to allow Shaum to pose the question at issue here, because portions of the voir dire were omitted, we unable to consider what questions were asked of jurors and thus cannot determine whether harm resulted. See, e.g., *Jackson v. State*, 281 Ga. App. 506, 509-510 (2) (636 SE2d 694) (2006).

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.